**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WILLIE LEE MURRAY,

      Petitioner,                                  CASE NO. 2:06-13283
                                               HONORABLE PAUL D. BORMAN
v.                                          UNITED STATES DISTRICT JUDGE

DAVID BERGH,

      Respondent.

_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS**
**CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL**
**IN FORMA PAUPERIS**

      Willie Lee Murray, ("petitioner"), presently confined at the Thumb Correctional Facility

in Lapeer, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254, in which he challenges his conviction for first-degree premeditated murder, Mich. Comp.

Laws § 750.316, two counts of first-degree criminal sexual conduct, Mich. Comp. Laws §

750.520b(1)(e), two counts of kidnapping, Mich. Comp. Laws § 750.349, possession of a firearm

during the commission of a felony, Mich. Comp. Laws § 750.227b, and arson of an unoccupied

dwelling, Mich. Comp. Laws § 750.73.  For the reasons that follow, the petition for writ of

habeas corpus is DENIED.

**I.  BACKGROUND**

      Petitioner was convicted of the above offenses following a jury trial in the Genesee

County Circuit Court, in which he was tried jointly with co-defendants Terry Ferguson and

Lystra Moore, but each defendant having a separate jury.  Another co-defendant, Antonio

Hudson, was convicted of these offenses at a separate trial.

Lieutenant Jerome Koger of the Flint Police testified that he was dispatched to the scene of a house fire on Mary Street in Flint, Michigan at about 9:30 p.m. on January 17, 1990. Upon arrival, Koger discovered a body in the basement. This body was later identified as the murder victim Lawrence White. White's hands had been tied behind his back. A cement block was located nearby. (Tr. 9/14/90, pp. 43-51).

Lieutenant Larry Edgecombe of the Flint Fire Department testified that his fire crew was dispatched to a structure fire on Mary Street in Flint, Michigan at about 9:30 p.m. on January 17, 1990. Upon arrival at the house, Edgecombe discovered the victim's body in the basement and alerted the police. Edgecombe also alerted an arson investigator because it appeared that the body had been burnt. (Tr. 9/18/90, pp. 121-28).

Catherine McCullough testified that she knew petitioner as "Goob." McCullough had been involved with petitioner and the other defendants in the trafficking of illegal drugs in Flint, Michigan. Jermaine Hammond sold drugs from her mother's house on petitioner's behalf. (Tr. 9/18/90, pp. 207-17).

On January 16, 1990, Hammond and Lawrence White were selling drugs from McCullough's house. At some point, Hammond left and White continued to sell drugs through the night. When McCullough awoke the next morning, White was still at her house. White subsequently became involved in an altercation with other drug dealers in the neighborhood and when the fight began to escalate, White exited out the back window. White informed McCullough that he was going to find petitioner in order to retaliate against the other dealers. (Tr. 9/18/90, pp. 218-22).

2

At around 6 p.m. on Tuesday, January 16, 1990, McCullough heard a knock at her door. At the door were petitioner, Terry Ferguson, and Tracy Turner. McCullough was taken at gun point by the men to a Stewart Street address. Petitioner and the other men took McCullough to this address to have her and White confront each other about their conflicting stories about a bag of cocaine that had been in White's possession that was now missing. (Tr. 9/18/90, pp. 224-31).

Upon her arrival at the Stewart Street address, McCullough observed White balled up in a corner. White looked as though he had been beaten. Petitioner ordered McCullough to tell White to his face about her explanation concerning the missing cocaine. After White and McCullough confronted each other, McCullough testified that she was raped and tortured with a hot knife. McCullough said that White also was sexually assaulted, burned, tortured, and beaten. McCullough and White were then taken to the basement, where the two were tied up. (Tr. 9/18/90, pp. 231-32, Tr. 9/19/90, pp. 233-67).

McCullough testified that she fell asleep and when she awoke, she discovered she'd been untied. McCullough escaped the home through a basement window. McCullough stayed at a friend's house for three days, mostly sleeping. McCullough then stayed at her mother's home for two weeks. McCullough never called the police out of fear. When she went to the doctor's office, she didn't inform him about the sexual assault. McCullough eventually spoke with Sergeant Mossman of the Flint Police but did not tell him about the sexual assault at first. (Tr. 9/19/90, pp. 268-79).

Jermaine Hammond testified against petitioner in exchange for a plea bargain that permitted him to plead guilty to first degree murder and kidnapping charges in the Probate Court, in order to be sentenced as a juvenile rather than as an adult. Hammond sold drugs for

petitioner. (Tr. 9/20/90, pp. 413-21).

On January 16, 1990, Hammond was selling cocaine out of McCullough's house when White replaced him. White had a bag of cocaine from which he was to sell to customers. Hammond, Ferguson, Turner, and petitioner later went to McCullough's house to confront her about a missing bag of cocaine. Petitioner was armed with a gun. McCullough was taken to the Stewart Street address where White and the others were. Hammond testified that White had been severely beaten. The issue of missing cocaine was brought up to have White and McCullough confront each other about how the cocaine went missing. During the confrontation, White slapped McCullough. (Tr. 9/20/90, pp. 421-30).

Hammond testified that McCullough and White were both sexually assaulted and White was tortured. Hammond testified that petitioner was one of the men who sexually assaulted McCullough. Hammond testified that White was hit repeatedly with an ax handle and burned with a hot knife. Hammond did not sexually assault McCullough but admitted kicking White in the head as he lay on the ground at petitioner's request. The missing cocaine was discovered in White's suitcase. Hammond testified that when the cocaine was discovered in White's suitcase, petitioner indicated that White would have to be killed. (Tr. 9/20/90, pp. 430-41).

Hammond testified that the co-defendants discussed what they should do with White and McCullough. Petitioner did most of the talking. White and McCullough were taken to the basement and tied up. Later, Hammond went downstairs and untied White and loosened McCullough's restraints. When he returned to the basement later, he found McCullough gone. Hammond was ordered to find McCullough. White was taken out of the house and when Hammond, in his pursuit of McCullough, came into contact with petitioner and the other

4

defendants, he was told by petitioner and the others that they were going to Meijers to get bandages for White's wounds. White was then taken to Sampson Mark's place where he was kept in the basement. White was moved again to Mary Street. There was talk of killing him and petitioner and the other defendants attempted to hang him. Finally death came to White when gasoline was poured on him, a concrete block was dropped on his head, and he was set on fire. Petitioner was present when this happened. (Tr. 9/21/90, pp. 574-77, 587, 590). [1]

Victor Hawkins testified that he resided at 125 E. Stewart Street in Flint and that he rented the downstairs apartment to petitioner, who lived with co-defendant Lystra Moore. Hawkins was also familiar with Hammond, Tracy Turner, and Antonio Hudson. While at home in the evening of January 16, 1990, Hawkins heard a bumping noise and went to investigate. Hawkins observed petitioner, Moore, Ferguson, Hudson, along with a woman and Lawrence White, who was naked. Hawkins testified that White's face was swollen and he looked beat up and scared. The female looked scared also. Hawkins advised petitioner and the other men that the house could not be torn up. Hawkins was asked if he wanted to hit anyone and he declined. Hawkins heard a swatting noise as he left the apartment. Hawkins testified that it was around 6 p.m. when he made his observations. (Tr. 9/25/90, pp. 592-611).

Waymond Thomas testified that he was familiar with petitioner and his two co-defendants. Thomas denied telling Sergeant Mossman that he had seen Lawrence White with

---

[1] In the Appellant's Brief on Appeal that petitioner has attached to his original habeas petition, petitioner's appellate counsel cited on pages 5-6 to page numbers of a transcript that this Court has been unable to find in the Rule 5 materials. Petitioner, however, does not dispute these facts. Moreover, the trial judge, in his ruling denying petitioner's first motion for relief from judgment, referenced to the same facts. Finally, this Court has cited to Hammond's testimony on cross-examination and on redirect examination in which Hammond indicated that petitioner and some of the other defendants killed White by setting him on fire and dropping a concrete block on his head.

5

petitioner, Ferguson, and Moore on the night in question and that White was so beaten up he looked like the "Elephant Man." Thomas also denied telling Sgt. Mossman that White was taken to the basement of Sampson Marks' house or that there was a discussion about killing him. Thomas denied telling Sergeant Mossman that petitioner was the "boss" of the drug gang. Thomas denied that he told petitioner to take White to the hospital. (Tr. 9/25/90, pp. 623-27). Sergeant Mossman later testified that Thomas had told him that he saw petitioner and the other defendants with White on the day in question and that White had been badly beaten. Thomas had told Sergeant Mossman that petitioner had stated that White had "f–d up" and one of the other men said that White would have to be killed. Sergeant Mossman testified that Thomas' trial testimony was a total fabrication. (*Id.,* pp. 693-97).

Sampson Marks, Waymond Thomas' cousin, testified that he knew petitioner and Ferguson. Marks went to Thomas' house to get some cocaine, but Thomas had none. Marks came into contact with petitioner who asked if he could bring someone over who had beaten him out of some cocaine. Marks saw a man with petitioner who had a swollen head and lips. (Tr. 9/25/90, pp. 631-44).

Jermaine Hammond's sister, Wanda, testified about a phone call made by petitioner in which he wanted to talk to her brother. When Wanda Hammond indicated that her brother was not there, petitioner told Wanda that Jermaine had done the right thing by saying Ferguson had set White on fire. Petitioner also informed Wanda Hammond that he told Jermaine that he had to get rid of McCullough and Tracy Turner because they were telling too much. (Tr. 9/25/90, pp. 675-80).

6

Following petitioner's conviction, a *Ginther* [2] hearing was conducted on his claim that trial counsel had been ineffective for failing to present an alibi defense.

Trial counsel Robin Wheaton testified that he discussed petitioner's defense with him numerous times and went over the dates of the offenses as contained in the presentence report. Petitioner informed Wheaton that he had nothing to do with the homicide. Although petitioner gave him the names of his mother and girlfriend, Wheaton testified that he and petitioner agreed to abandon the alibi defense because neither witness could provide petitioner for an alibi for the entire time period of the alleged crimes. Wheaton felt there was no alibi defense so no notice was filed, no witnesses were interviewed, and none were called. Wheaton did not remember the name of a witness Dorcia Thomas or that the name was in his file. (Tr. 4/7/94, pp. 15-20).

The testimony of Shontel Jackson, petitioner's girlfriend in January, 1990, was presented through a previously taken deposition. Shontel Jackson testified via deposition that petitioner arrived at her house on the evening of January 17, 1990 and remained until 2 a.m. Jackson indicated that there was a dinner party at her house that night that was attended by Stephanie Roberts, Dorcia Thomas, and Darren McCaskey.

Carolyn Moore, petitioner's mother, testified that petitioner came to her house around 5:00 p.m. on January 17, 1990 and dropped off his daughter. Moore testified that she saw petitioner briefly again at 10:30 p.m. Moore later heard petitioner return to her home around 3-3:30 a.m. on January 18, 1990. Moore saw petitioner later that morning when her daughter, Summer Moore, woke him to take her to school. Petitioner took his sister to school before returning to his mother's house for breakfast. On cross examination, Moore admitted that she

---

[2]  *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973).

7

may have confused the dates when talking to Sergeant Khouri.  Moore admitted that she was not

with petitioner from 5-10 p.m. on January 17, 1990. (Tr. 4/7/94, pp. 24-30).

Summer Moore testified that she woke petitioner around 9 a.m. on January 18, 1990 to

take her to school.  Ms. Moore didn't remember speaking with Sergeant Khouri.  Moore also

admitted that she was not with petitioner on January 15 or 16 or between 5 and 9 p.m. on January

17, 1990. (Tr. 4/7/94, pp. 32-35).

Petitioner testified that from 5 p.m. on January 17, 1990 until approximately 7 a.m. on

January 18, 1990 he was with his mother and then Shontel Jackson and others.  Petitioner

testified he had dinner at Shontel's on January 17th and played cards and video games.

Petitioner had dropped off his daughter around 5:30 p.m. at his mother's house.  Petitioner left

Jackson's home when Hammond and Ferguson woke him up.  Stephanie Roberts had let them in

the house.  Petitioner did not return that night but instead slept at his mother's home.  Petitioner

claimed that he never agreed to abandon his alibi defense.  Instead, trial counsel told petitioner

that he had forgotten to file the alibi notice.  On cross-examination, petitioner indicated that

although he thought that it had been raining and sleeting on January 17, 1990, he could not see

snow in the pictures of the murder scene from the next day.  Petitioner did not contact his alibi

witnesses himself because he left it up to his attorney and also so that no one could claim he was

intimidating people.  Petitioner acknowledged that his alibi would have pertained to between

5:00 p.m. and 1:30 a.m. for the evening and early morning of January 17-18, 1990. (Tr. 4/7/94,

pp. 33-43).

Dorcia Thomas testified that she was familiar with Shontel Jackson and that she went to

her home on January 17, 1990.  Thomas arrived at 6 or 6:30 p.m and saw petitioner there.  When

8

she left at midnight, petitioner was still there.  Thomas denied telling Sergeant Khouri that the

dinner gathering was on the 15th. (Tr. 4/8/94, pp. 69-76).

     The prosecutor called Stephanie Roberts to testify.  Roberts denied having dinner with

petitioner at Shontel Jackson's home.  Roberts didn't know Dorcia Thomas or Darren

McCaskey.  On re-direct examination, she said she remembered only spending one night at

Shontel Jackson's and it probably wasn't January 17, 1990.  Roberts testified that she never

heard a banging on the door at Jackson's home and did not wake up petitioner. (Tr. 4/8/94, pp.

77-84).

     Sergeant Khouri testified and indicated in the statements he took from Carolyn and

Summer Moore that the relevant dates they discussed were January 16 and January 17, 1990, not

January 17 and January 18. (Tr. 4/8/94, pp. 85-98).

     Following the evidentiary hearing, the trial judge denied petitioner's motion for a new

trial:

> After reading the deposition of Shontel Jackson, taken on May 20, 1993, and
> listening to the testimony of the witnesses at the hearing – the defendant, Carolyn
> Moore and Summer Moore (his mother and sister), Dorcia Thomas, Stephanie
> Roberts and William Khouri – and reading the trial testimony of Catherine
> McCullough, Jermaine Hammond, Jerome Koger, Victor Hawkins, Waymond
> Thomas, Sampson Marks and Ronald Mossman, the Court is convinced that the
> testimony of Mr. Wheaton is true and that the decision not to file a notice of alibi,
> so that the mother and Shontel Jackson could testify, does not establish a claim of
> ineffective assistance of counsel.

*People v Murray*, No. 90-43067-FC, p. 3 (Genesee County Circuit Court, April 25, 1994)

     Petitioner's conviction was affirmed on appeal. *People v. Murray*, No. 137294

(Mich.Ct.App. October 18, 1996); *lv. den.* 456 Mich. 862, 568 N.W.2d 679 (1997).

     Petitioner filed a post-conviction motion for relief from judgment with the trial court,

which was denied. *People v. Murray*, 90-43067-FC (Genesee County Circuit Court, November 27, 2003).  The Michigan appellate courts denied petitioner leave to appeal. *People v. Murray*, No. 259509 (Mich.Ct.App. Aug. 16, 2005); *lv. den.* 474 Mich. 978, 707 N.W.2d 202 (2005); *cert. den. Sub nom Murray v. Michigan,* 547 U.S. 1166 (2006).

On July 20, 2006, petitioner filed his petition for writ of habeas corpus with this Court. On July 28, 2008, this Court held the petition in abeyance so that petitioner could return to the state courts to exhaust additional claims. *Murray v. Prelesnik*, No. 2:06-CV-13283; 2008 WL 2922498 (E.D. Mich. July 28, 2008).

Petitioner filed a second motion for relief from judgment, which was denied by the trial court. *People v. Murray*, 90-43067-FC (Genesee County Circuit Court, June 24, 2009).  The Michigan appellate courts denied petitioner leave to appeal. *People v. Murray,* No. 296537 (Mich.Ct.App. June 4, 2010); *lv. den.* 488 Mich. 1038, 793 N.W.2d 704 (2011).

On March 7, 2012, this Court granted petitioner's motion to lift the stay and permitted him to file an amended habeas petition. *Murray v. Prelesnik,* No. 06-CV-13283; 2012 WL 750085 (E.D. Mich. March 7, 2012).

On June 18, 2013, the Court denied respondent's motion for summary judgment and ordered respondent to file an answer. *Murray v. Bergh*, No. 06-CV-13283; 2013 WL 3068698 (E.D. Mich. June 18, 2013).

In his original and amended habeas petitions, petitioner seeks habeas relief.  For purposes of judicial clarity, the Court has renumbered petitioner's claims: [3]

---

[3]  In his original habeas petition, petitioner sought relief for "the denial of [Petitioner's] right to effective assistance of counsel, denial of due process of law guaranteed by due process clause of the fourteenth amendment of the United States Constitution.  Petitioner also incorporates into his petition all questions he submitted to the Michigan courts." (Petition, 4).

I. Appellant was denied his constitutional rights under the Michigan and United States Constitutions to the effective assistance of counsel by trial counsel's failure to properly present appellant's alibi defense to the charge of murder.

II. Appellant was denied his right to a fair trial under the Michigan and United States Constitutions due to the assistant prosecutor's improper comments during closing argument.

III. Appellant was denied his right to a fair trial under the Michigan and United States Constitutions due to the admission into evidence, over objection, of autopsy photos of the victim.

IV. Whether the reasonable doubt instruction was incomplete and erroneous, and also violated Appellant's due process rights.

V. Whether Appellant was denied a fair trial by the erroneous admission of certain portions of testimony whose unfairly prejudicial effects substantially outweighed their probative value.

VI. Whether reversible error occurred when the prosecutor improperly expressed his personal opinion on the truthfulness of a witness' testimony during closing argument.

VII. Whether it was reversible error for the trial court to allow the prosecutor to call a witness whom the prosecutor knew to be hostile, for the primary purpose of eliciting otherwise inadmissible impeachment testimony.

VIII. Whether the trial court failed to caution the jury on the limited purpose of impeaching witness, Waymond Thomas.

IX. Defendant was denied his constitutional rights under the Michigan and United States Constitutions to the effective assistance of counsel's failure to call defendant as a witness after defendant advised counsel that he wished to testify, and by counsel's erroneous mis-advice to defendant that defendant could not testify at trial and by counsel's failure to advise the defendant of his right to testify in his own behalf.

X. Defendant was denied his constitutional rights under the Michigan and United States Constitutions to due process and a fair trial due to prosecutorial misconduct for:

    A. Knowingly, willingly, and intentionally suppressing evidence from trial favorable to the defendant;

    B. Knowingly, willingly and intentionally instructing a key witness to provide false testimony at defendant's preliminary examination

and trial;

C. Knowingly, willingly and intentionally using false testimony and allowing it to stand uncorrected;

D. Knowingly, willingly and deliberately committing fraud upon the court.

XI. Whether trial counsel was ineffective by not moving to suppress the testimony of a codefendant due to the prosecuting attorney's violation of defendant's First, Fifth, and Sixth Amendments by violating 19 U.S.C. 201 (C)(2) and Michigan Rule of Professional conduct, 3.4(b).

XII. The prosecutor engaged in misconduct by conspiring to present false testimony concerning Jermaine Hammond's plea deal.

XIII. The prosecutor engaged in misconduct by withholding evidence of Hammond's plea deal from Murray.

XIV. The new evidence of this plea deal proves Murray is actually innocent.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

13

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing petitioner's claims, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

**III. DISCUSSION**

    **A. Claims # 2, 6, and 9-14. The procedurally defaulted claims.**

The Court will discuss petitioner's procedurally defaulted claims first for judicial economy and clarity. Petitioner's second, sixth, and ninth through fourteenth claims claims are procedurally defaulted for various reasons.

14

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner's second and sixth claims alleging prosecutorial misconduct are procedurally defaulted because petitioner failed to preserve the issues by objecting at trial and as a result, the Michigan Court of Appeals reviewed the claims for plain error only. *Murray,* No. 137294, Slip. Op. at p. 2.

Michigan law requires that a criminal defendant object to prosecutorial misconduct in order to preserve such a claim for appellate review. *See Burton v. Bock,* 320 F. Supp. 2d 582, 589 (E.D. Mich. 2004)(citing *People v. Ullah,* 216 Mich. App. 669, 679; 550 N.W. 2d 568 (1996)); *See also People v. Stanaway,* 446 Mich. 643, 687; 521 N.W. 2d 557 (1994). The Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved his prosecutorial misconduct claims. Petitioner's second and sixth claims are

15

procedurally defaulted.

In the present case, petitioner has offered no reasons for his failure to preserve these two claims. Although ineffective assistance of counsel may constitute cause to excuse a procedural default, that claim itself must be exhausted in the state courts. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Although petitioner raised several ineffective assistance of counsel claims on direct appeal and in his first post-conviction motion, he never raised a claim that trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct. Because petitioner never raised in the Michigan courts a specific claim about trial counsel's failure to object to the prosecutor's comments, any alleged ineffectiveness of counsel cannot constitute cause to excuse petitioner's default with respect to his second and sixth claims. *See Wolfe v. Bock,* 412 F. Supp. 2d 657, 684 (E.D. Mich. 2006). Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his second and sixth claims. *Smith*, 477 U.S. at 533.

Respondent contends that petitioner's ninth through eleventh claims are procedurally defaulted because petitioner raised these claims for the first time in his first post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would

16

have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

In the present case, the Genesee County Circuit Court judge, in denying petitioner's post-conviction motion, initially noted that he could not grant post-conviction relief on a claim that could have been raised on appeal unless the defendant established good cause for failing to

17

raise the claim on direct appeal and actual prejudice. (Tr. 11/27/03, p. 10).  The judge

subsequently ruled that petitioner had failed to show good cause for failing to raise his post-

conviction claims earlier or prejudice because he was unable to show a reasonable likelihood

that he would have been acquitted. (*Id.,* p. 13).

Because the trial court judge denied petitioner post-conviction relief based on the

procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's post-conviction claims are clearly

procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F.3d 284,

292-93 (6th Cir. 2007); *see also Howard v. Bouchard,* 405 F.3d 459, 477 (6th Cir. 2005).  The

fact that the trial judge may have also discussed the merits of petitioner's claims in addition to

invoking the provisions of M.C.R. 6.508(D)(3) to reject petitioner's claims does not alter this

analysis. *See Alvarez v. Straub,* 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999).  A federal court

need not reach the merits of a habeas petition where the last state court opinion clearly and

expressly rested upon procedural default as an alternative ground, even though it also expressed

views on the merits. *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).  Petitioner's ninth

and tenth claims are procedurally defaulted.[4]

With respect to his claims that were raised on his first post-conviction motion, petitioner

alleges ineffective assistance of appellate counsel as cause to excuse his procedural default.

Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to

have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S.

---

[4] Petitioner could not have procedurally defaulted his eleventh claim which alleges the ineffective
assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to
raise this claim. *See Guilmette*, 624 F. 3d at 291.  However, for the reasons stated below, petitioner is not entitled to
habeas relief on this claim.

18

745, 751 (1983).  The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [*v. Washington,* 466 U.S. 668 (1984)] claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d

849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his first post-conviction motion for relief from judgment. Appellate counsel filed a twenty four page appellate brief which raised the first three claims that petitioner has presented in his petition. Appellate counsel also successfully moved for a *Ginther* hearing on petitioner's first ineffective assistance of trial counsel claim. Petitioner has not shown that appellate counsel's strategy in presenting these three claims and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Genesee County Circuit Court judge in rejecting petitioner's post-conviction claims, none of the claims raised by petitioner in his first post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano,* 228 F.3d 674, 682-83 (6th Cir. 2000).

Moreover, because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones,* 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

This Court further notes that in addition to the appellate brief filed by appellate counsel, petitioner filed a supplemental *pro per* brief on his appeal of right before the Michigan Court of Appeals. Although petitioner raised five claims in this supplemental appeal brief, he did not

20

present any of the issues that he would subsequently raise for the first time in his first post-conviction motion for relief from judgment. Petitioner took advantage of the opportunity pursuant to the Michigan Court Rules to file a supplemental appellate brief to raise claims that had not been raised by his appellate counsel, yet failed to include what make up his ninth and tenth claims in his supplemental brief. Petitioner has offered this Court no explanation why he failed to raise his ninth and tenth claims in his supplemental *pro per* brief that he filed as part of his direct appeal. Because petitioner has offered no reasons for his failure to include the claims that he raised in his first post-conviction motion in his supplemental *pro per* brief on his direct appeal, he has failed to establish cause to excuse the default of these claims. *See Rockwell v. Palmer,* 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008)(habeas petitioner did not show any cause for his failure to raise on direct appeal his claim of ineffective assistance of trial counsel, where petitioner had filed two briefs on his own behalf raising other claims that had not been asserted by his appellate counsel, but he offered no explanation for his failure to raise the ineffective assistance claim at the same time).

In the present case, petitioner has failed to show cause to excuse his default of the claims that he raised for the first time in his first post-conviction motion for relief from judgment. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533.

Finally, petitioner's twelfth through fourteenth claims are, by petitioner's own admission, procedurally defaulted because he raised them only for the first time in his second post-conviction motion for relief from judgment and the Michigan Supreme Court relied on

M.C.R. 6.502(G) to reject petitioner's second post-conviction motion.[5]

Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan can typically file only one motion for relief from judgment with regard to a criminal conviction. See *Banks v. Jackson,* 149 F. App'x. 414, 418 (6th Cir. 2005); *Mohn v. Bock,* 208 F. Supp. 2d 796, 801 (E.D. Mich. 2002); *Hudson v. Martin,* 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999)(citing to *People v. Ambrose*, 459 Mich. 884; 587 N. W. 2d 282 (1998)).  However, M.C.R. 6.502(G)(2) states that a defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion. *Banks,* 149 F. App'x. at 418; *Mohn,* 208 F. Supp. 2d at 801; *Hudson,* 68 F. Supp. 2d at 800-01.

The Michigan Supreme Court rejected petitioner's appeal from the denial of his second motion for relief from judgment because M.C.R. 6.502(G) prohibits an appeal from the denial of a second or successive post-conviction motion for relief from judgment.

Petitioner's first motion for relief from judgment was filed in 1998.  At the time that the petitioner filed his first motion, M.C.R. 6.502(G) was a firmly established and regularly followed procedural rule that would be sufficient to invoke the doctrine of procedural default. See *Porter v. Smith,* 197 F. Supp. 2d 827, 832-33 (E.D. Mich. 2002).  Because petitioner's twelfth through fourteenth claims were rejected by the Michigan Supreme Court pursuant to

---

[5]  The Court is aware that respondent did not argue in his supplemental answer that petitioner's twelfth through fourteenth claims were procedurally defaulted pursuant to M.C.R. 6.502(G).  However, nothing precludes a federal court from *sua sponte* raising the issue of procedural default so long as the petitioner has had an opportunity to respond to the procedural default issue. *See Lorraine v. Coyle,* 291 F.3d 417, 426 (6th Cir. 2002).  Because petitioner himself acknowledges in his amended habeas petition and in his reply to respondent's supplemental answer that the Michigan Supreme Court's rejection of his claims pursuant to M.C.R. 6.502(G) amounts to a procedural default and offers arguments to excuse the default, the Court will raise the procedural default issue on its own initiative.

Mich.Ct.R. 6.502(G), the claims are procedurally defaulted. *Id.*

In his twelfth through fourteenth claims, petitioner alleges that the prosecutor misled the jury by permitting Jermaine Hammond to testify that the entire plea agreement consisted of him pleading guilty to two charges of first-degree murder and kidnapping, in exchange for him being sentenced as a juvenile rather than as an adult. Petitioner, however, alleges that the prosecutor withheld the fact that Hammond had five other felony charges that were also dismissed as part of this plea agreement and thus permitted Hammond to commit perjury concerning the extent of the plea bargain. Petitioner claims in his amended habeas petition, in his second motion for relief from judgment, and in his reply brief that he did not discover the factual predicate of his claim until March 21, 2008, when he and a fellow inmate reviewed a portion of co-defendant Lystra Moore's preliminary examination transcript from May 30, 1990 and June 1, 1990, in which these additional charges against Hammond were purportedly mentioned.

"[F]ederal law generally limits action taken based on newly discovered evidence to situations where the evidence could not have been discovered sooner through due diligence." *Hodge v. Haeberlin*, 579 F.3d 627, 637 (6th Cir. 2009). Mr. Moore's preliminary examination transcript was a part of the state court record. Petitioner has offered neither the state courts nor this Court any convincing argument why it took him almost eighteen years to discover the factual predicate for his twelfth through fourteenth claims. Because petitioner has failed to show due diligence in attempting to discover the factual basis for his twelfth through fourteenth claims, he has failed to establish cause to excuse his default.

Finally, petitioner has not presented any new reliable evidence to support any assertion

23

of innocence which would allow this Court to consider his second, sixth, or ninth through fourteenth claims as a ground for a writ of habeas corpus in spite of the procedural default.

Petitioner has attached two affidavits from Jermaine Hammond, one dated August 14, 1993, and a second dated March 1, 1994, in which he recants his trial testimony against all of the defendants, including petitioner, and claims he committed perjury. [6]  The second affidavit was signed and witnessed by Antonio Hudson, one of the co-defendants in this case.

Recanting affidavits and witnesses are viewed with "extreme suspicion." *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991); *See also Byrd v. Collins,* 209 F.3d 486, 508, n. 16 (6th Cir. 2000).  Furthermore, a federal court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup v. Delo,* 513 U.S. at 332.

Hammond did not sign his first recanting affidavit until August 14, 1993, which was almost three years after petitioner was convicted of this crime, and did not sign his second affidavit until March 1, 1994.  Neither affidavit offers any convincing explanation as to why Hammond waited almost three years to recant his trial testimony. *See Lewis v. Smith,* 100 F. App'x. 351, 355 (6th Cir. 2004)(proper for district court to reject as suspicious a witness's recanting affidavit made two years after petitioner's trial); *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 874 (E.D. Mich. 2010)(long-delayed affidavit of accomplice recanting statement to police did not establish petitioner's actual innocence where it was made almost two years after petitioner's trial).  Moreover, this affidavit is highly suspicious, in that the recantation

---

[6]  The affidavits are Appendices 1 and 2 of the documents provided by petitioner to this Court on April 30, 2012 [Dkt. # 47].

came years after Hammond had received his plea bargain for testifying against petitioner and had already been sentenced and thus had nothing to lose by recanting. *Strayhorn,* 718 F. Supp. 2d at 874. This Court also notes that Hammond was incarcerated at the Thumb Correctional Facility at the time that he signed these affidavits. The second affidavit, in fact, was witnessed by co-defendant Antonio Hudson. Jailhouse recantations usually lack any meaningful indicia of reliability and are "properly regarded as 'highly suspicious.'" *U.S. v. Connolly,* 504 F.3d 206, 215 (1st Cir. 2007)(internal quotation omitted). "[R]easonable jurors no doubt could question the credibility of this about face from [Hammond] and rationally could discount his testimony as nothing more than an attempt to keep from being 'pegged as a rat' for having originally identified" petitioner as being involved with this crime. *See McCray v. Vasbinder,* 499 F.3d 568, 574 (6th Cir. 2007). Because recantation testimony is regarded with "extreme suspicion," Hammond's alleged recantation is not the type of reliable evidence that would establish petitioner's actual innocence to excuse his default. *See Carter v. Mitchell,* 443 F.3d 517, 539 (6th Cir. 2006).

Petitioner further claims that evidence that Hammond committed perjury about the terms of his plea agreement constitutes newly discovered evidence of his innocence that should excuse any default. Impeachment evidence does not provide sufficient evidence of actual innocence to excuse a procedural default or other procedural bar. *See Calderon v. Thompson*, 523 U.S. 538, 563 (1998)(newly discovered impeachment evidence, which is "a step removed from evidence pertaining to the crime itself," "provides no basis for finding" actual innocence); *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992) (newly discovered impeachment evidence "will seldom, if ever," establish actual innocence); *See also Harris v. Stegall,* 157 F. Supp. 2d 743,

750-51 (E.D. Mich. 2001)(state trial court's allegedly erroneous exclusion of victim's statements to police was insufficient to justify invoking fundamental miscarriage of justice exception to procedural default rule on federal habeas review when statements were merely impeaching and did not provide basis for any claim of actual innocence).

Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claims on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002).   Petitioner is not entitled to habeas relief on his procedurally defaulted claims.

**B. Claim # 1.  The ineffective assistance of trial counsel claim.**

In his first claim, petitioner contends that he was denied the effective assistance of trial counsel because his trial attorney failed to present an alibi defense.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that,

26

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.   "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to § the 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785.  "Surmounting

27

*Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

> Because of this doubly deferential standard, the Supreme Court has indicated that:
>
> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel' s actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over twenty three years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington*, 131 S. Ct. at 789.

The trial court judge rejected petitioner's claim following the *Ginther* hearing. The trial judge first found that attorney Wheaton's testimony that petitioner had agreed to abandon the alibi defense was true. *See People v. Murray,* No. 90-43067-FC, p. 3 (Genesee County Circuit Court, April 25, 1994). The judge further noted that Carolyn Moore's and Sumner Moore's testimony could not have supported an alibi for petitioner because they claimed to have saw him hours after the crime was committed. The judge further noted that Carolyn Moore's testimony that petitioner came to her house at 10:30 p.m. the night of the murder conflicted with Dorcia Thomas' testimony that petitioner was with her at Shontel Jackson's home until midnight. The judge noted that Dorcia Thomas had initially told Sergeant Khouri that petitioner was at

Jackson's house on January 15th but testified at the *Ginther* hearing that it was January 17th, although he found her explanation as to how she could now remember the exact date to be unconvincing. The judge noted that because petitioner's own mother did not provide him for a complete alibi for the night in question, this would lend credibility to her testimony [that petitioner came to her house at 10:30] and would thus cause the jurors to conclude that Shontel Jackson and Dorcia Thomas were mistaken as to the night that the dinner and card games occurred. The judge further indicated that Jackson's proposed alibi testimony would have been impeached by the fact that although she testified that it had snowed on the night of January 17th, a picture from the crime scene from the early morning of January 18th showed no snow. *Id.,* pp. 4-5. The judge further noted that although Jackson claimed that Stephanie Roberts was at her house on the night in question, Roberts denied being there and stated that this was a lie. *Id.,* pp. 5-6. After further discussing the overwhelming evidence against petitioner, *Id.,* pp. 6-8, the judge concluded that petitioner was a "drug dealer, gun-toting kidnapper, torturer, rapist, and murderer" who should not be believed. The judge further found that Robin Wheaton, petitioner's attorney, was "an ethical and competent lawyer" who should be believed. The judge further concluded that the decision not to present a "very shaky alibi" from petitioner's mother and sister that would cover "only the last few hours of the criminal episode that the jury would probably think was a mistake or a lie" was a reasonable trial strategy. *Id.,* p. 8. The judge further concluded that presenting alibi testimony from petitioner's sister and mother, followed by testimony from Jackson and Thomas that would have contradicted them, could not have made a difference in the trial because "the alibi would have been so transparent and insubstantial." *Id.* at p. 9.

29

The Michigan Court of Appeals rejected petitioner's claim:

> Following a two day *Ginther* hearing, the trial court found that the alibi witnesses testimony did not provide defendant with a complete alibi and, furthermore, that the testimony of the witnesses conflicted. The trial court held that counsel's failure to file a notice of alibi did not constitute ineffective assistance of counsel. A reading of the testimony of the alleged alibi witnesses showed that defendant's alibi was either incomplete or fabricated by defendant himself and/or the witnesses. We agree with the trial court. In light of the fact that defendant's alibi was incomplete, counsel did not err in failing to file a notice of alibi or in calling the alleged alibi witnesses.

*Murray,* No. 137294, Slip. Op. at pp. 1-2 (internal citations and footnote omitted).

Petitioner is not entitled to habeas relief on his claim for several reasons. First, petitioner's counsel testified at the *Ginther* hearing that petitioner only informed him about his mother and sister as potential alibi witnesses and did not remember the name of Dorcia Thomas. There was no indication that petitioner ever informed counsel about Shontel Jackson or Dorcia Thomas being potential alibi witnesses. The trial judge, in rejecting petitioner's ineffective assistance of counsel claim, found trial counsel's version of events to be more credible than petitioner's version of events. Although the issue of ineffective assistance of counsel presents a mixed question of law and fact, any underlying historical facts found by the state courts are presumed correct. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996). The presumption of correctness also "applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *Carey v. Myers*, 74 F. App'x. 445, 448 (6th Cir. 2003) (citing *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996)). Because the trial court and the Michigan Court of Appeals both chose to credit counsel's version of events in rejecting petitioner's ineffective assistance of counsel claim, this Court is bound by that factual determination, including the implicit factual finding that

petitioner never informed his attorney about either Shontel Jackson or Dorcia Thomas.

Moreover, the trial judge did not find the proposed alibi testimony of Shontel Jackson or Dorcia Thomas to be very credible, in that the time frame that they claim that petitioner was with them conflicted with petitioner's mother's proposed testimony. The judge further noted that other evidence called into question the proposed alibi testimony of these witnesses. In this case, there is no clear and convincing evidence to reject the trial court's credibility finding regarding petitioner's proposed alibi witnesses Shontel Jackson and Dorcia Thomas. *See e.g. Fargo v. Phillips,* 58 F. App'x. 603, 607 (6th Cir. 2003). The trial court's findings are reasonable in light of the fact that these two women's proposed testimony conflicted on a number of points with the physical evidence, with prior statements made by Thomas to the police, and with the other proposed alibi witnesses themselves. Counsel was not ineffective for failing to present these two women as alibi witnesses. *See e.g. Thurmond v. Carlton,* 489 F. App'x. 834, 841 (6th Cir. 2012)(trial counsel's decision not to call an alibi witness did not amount to ineffective assistance where the statements of the petitioner and his alibi witness were inconsistent with each other and internally).

Counsel was also not ineffective for failing to present petitioner's mother and sister as alibi witnesses because they could not have provided him an alibi for the time frame of between 6:00 p.m. and 9:30 p.m. when the murder took place. Because there was a window of opportunity for petitioner to have committed this murder on the night in question prior to going to his mother's house, petitioner was not prejudiced by counsel's failure to present his mother or sister as alibi witnesses. *See e.g. Fargo v. Phillips,* 58 F. App'x. at 607-08. Because petitioner's mother or sister could not have provided an "air-tight" alibi defense, counsel was

31

not ineffective for failing to call them to testify at trial. *See Moore v. Parker*, 425 F.3d 250, 253-54 (6th Cir. 2005). In addition, because petitioner's mother and sister were family members, counsel could have reasonably concluded that neither would have been a credible alibi witness. *See Stadler v. Berghuis,* 483 F. App'x. 173, 176-77 (6th Cir. 2012).

Finally, petitioner was not prejudiced by counsel's failure to call alibi witnesses in light of the fact that several witnesses who knew petitioner positively identified him as being involved in these crimes. *See Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013); *cert. den.* 133 S.Ct. 2866 (2013). Petitioner is not entitled to habeas relief on his first claim.

**C. Claims # 3, # 5, and # 7. The evidentiary law claims.**

In his third, fifth, and seventh claims, petitioner alleges various errors in the admission of evidence.

It is well settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

In his third claim, petitioner claims that the trial court erred in admitting autopsy photographs of the victim. Petitioner's claim that the trial court admitted photographs of the murder victim fails to state a claim upon which habeas relief can be granted. *See e.g. Franklin v. Bradshaw*, 695 F.3d 439, 456-57 (6th Cir. 2012); *cert. den. sub nom Franklin v. Robinson,* 133 S. Ct. 1724 (2013); *Cooey v. Coyle,* 289 F.3d 882, 893-94 (6th Cir. 2002).

In his fifth claim, petitioner claims that his right to a fair trial was violated by the admission of testimony from several police officers that they executed a search warrant at a

32

house in Flint, Michigan and arrested petitioner in the possession of narcotics, money, firearms, and drug paraphernalia. Petitioner claims that this evidence was irrelevant and inadmissible "prior bad acts" evidence that was admitted in violation of M.R.E. 404(b).

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009).

To the extent that petitioner argues that the state court violated M.R.E. 404(b) by admitting improper character evidence against him, he would not be entitled to relief because this claim is non-cognizable on habeas review. *See Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003).

In his seventh claim, petitioner claims that the prosecutor deprived him of a fair trial by calling Waymond Thomas to the stand for the sole purpose of impeaching Thomas with his prior inconsistent statements.

Under F.R.E. 607, it is proper for a prosecutor to impeach the credibility of his or her own witness. *See U.S. v. Faymore,* 736 F.2d 328, 334 (6th Cir. 1984). Although F.R.E. 607 is

not controlling in a state trial, it "certainly provides persuasive evidence that allowing the
prosecutor to impeach his own witnesses does not rise to a constitutional violation meriting
habeas corpus relief." *Lyle v. Koehler*, 720 F.2d 426, 429 (6th Cir. 1983). Petitioner is not
entitled to habeas relief on his third, fifth, or seventh claims.

**D.  Claims # 4 and # 8.  The jury instruction claims.**

In his fourth and eighth claims, petitioner alleges instructional error.

In his fourth claim, petitioner contends that the trial court judge gave the following
reasonable doubt instruction that he claims was defective:

> A reasonable doubt is a fair, honest doubt growing out of the evidence, or lack of
> evidence.  It is not an imaginary or possible doubt but a doubt based on reason and
> common sense.  A reasonable doubt is just that, a doubt that is reasonable after a
> careful considered examination of the facts and circumstances of this case

(Tr. 10/1/90, p. 1045).

In the present case, the trial court gave the jury Michigan's standard reasonable doubt
instruction, CJI 2d 3.2, to the jury.  This instruction has been upheld as being constitutional. *See
Binder v. Stegall*, 198 F.3d 177, 178-79 (6th Cir. 1999); *See also Poremba v. Bock,* 92 F. App'x.
186, 188 (6th Cir. 2004); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1094 (E.D. Mich. 2004).
This claim is therefore without merit.

In his eighth claim, petitioner contends that his right to a fair trial was violated because
the judge failed to give the jurors a limiting instruction that Waymond Thomas' prior
inconsistent statements could be used only to impeach his credibility and not as substantive
evidence.

The use of a witness' prior inconsistent statement as substantive evidence, and not
merely for impeachment purposes, is not an error of constitutional dimension.  *See Isaac v.*

*United States,* 431 F.2d 11, 15 (9th Cir. 1970).  Therefore, any jury instruction that would permit

the jury to use to a witness' prior inconsistent statement as substantive evidence and not solely

for impeachment is not a constitutional error which would require reversal of a criminal

conviction. *Id.*  Moreover, because there was no indication that the trial court or the prosecutor

ever suggested to the jury that they could use Thomas' prior inconsistent statements as

substantive evidence, petitioner was not prejudiced by the trial court's failure to give a limiting

instruction.  *Cf. Fenske v. Thalacker,* 60 F.3d 478, 482 (8th Cir. 1995) (petitioner was not

prejudiced by counsel's failure to object to lack of limiting instruction when prior unsworn

statement of witness was admitted for impeachment, where jury probably used it to impeach the

witness's credibility and not for improper purpose).  Accordingly, petitioner is not entitled to

habeas relief on his eighth claim.

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a

certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must

make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To

demonstrate this denial, the applicant is required to show that reasonable jurists could debate

whether, or agree that, the petition should have been resolved in a different manner, or that the

issues presented were adequate to deserve encouragement to proceed further.  *Slack v.*

*McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's

constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims to be debatable or wrong.

*Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds

without reaching the prisoner's underlying constitutional claims, a certificate of appealability

should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d at 885. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

**IV. CONCLUSION**

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis.*

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: December 23, 2013

36

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 23, 2013.

s/Deborah Tofil
Case Manager